# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GARY L. WILT, | : | |
| Plaintiff, | : | |
| | | Case No. 3:06CV0125 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| JO ANNE B. BARNHART,[1] | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[2]

### I.  INTRODUCTION

Plaintiff Gary L. Wilt has worked as a maintenance worker, glazer, material handler, dairy farmer and auctioneer. (Tr. 65, 103). He sustained a back injury in 1990 from a car accident, and a second back injury while stepping out of his truck in 2003. (Tr. 157).  Plaintiff's back pain, along with depression led him to seek assistance from the Social Security Administration by applying for Disability Insurance Benefits (DIB) on April 28, 2003 (Tr. 47-49) and Supplemental Security Income (SSI) on May 13, 2003. (Tr. 320).

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration, *see* http://www.ssa.gov/pressoffice/pr/astrue-pr.htm, and he is therefore the proper-party defendant in this case.  For docketing continuity, the caption of this case will remain the same.

[2] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

After various administrative proceedings, Administrative Law Judge Daniel Shell denied Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff's impairment did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 11-26). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), the administrative record, and the record as a whole.

Plaintiff seeks reversal of the ALJ's decision or, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    ADDITIONAL BACKGROUND

At the time of the ALJ's decision, Plaintiff's age (55) placed him in the category of a "person of advanced age" for purposes of resolving his SSI and DIB applications. *See* 20 C.F.R. §404.1563 (e) and §416.963 (e), *see also* Tr. 15. He has a high school education. (Tr. 15, 70). *See* 20 C.F.R. §404.1564 (b)(4) and §416.964 (b)(4).

Plaintiff alleges disability as of November 30, 1999, pursuant to his SSI application and DIB application.

The parties have provided detailed and informative descriptions of Plaintiff's

2

medical records supported with many specific citations to evidence of record. *See* Doc. #7 at 3-6 and Doc. #8 at 3-8. In light of this, and upon the Court's consideration of the record as a whole, there is no need to expand upon the parties' well-written factual descriptions. Still, some highlights of Plaintiff's testimony during the ALJ's hearing help frame further review.

Plaintiff testified during the ALJ hearing that he returned to Ohio in 2000 after working as a full time farmer in Wisconsin. (Tr. 336). In 2000, he performed part-time work for farmers. (Tr. 339). During this time he was paid mostly in cash. *Id*. Plaintiff stated that he could not work because of serious back trouble, and because he was "a little bothered now that [he is] sitting around doing nothing." (Tr. 340). He has seen a chiropractor for treatment since 1990. (Tr. 341). Although he also tried physical therapy, it did not go well and he discontinued it. *Id*. Plaintiff further testified at the hearing that he sought counseling to "keep [his] mind cleared up," since doing nothing was unusual for him. (Tr. 342). He took nonprescription Aleve, which "seems to pretty well knock the edge off so it's livable from day to day." *Id.* Plaintiff did not know if he could return to work; he did not think he could stand eight hours or sit or stand or lift. *Id*.

A vocational expert testified at the administrative hearing. Referring to the Dictionary of Occupational Titles, the expert categorized Plaintiff's past employment as follows: his maintenance job involved medium and semi-skilled work; his job as a glazer involved heavy and skilled work; his job as material handler consisted of heavy and semi-skilled work; his job as a dairy farmer involved heavy and skilled work; and his job as an

3

auctioneer as light and skilled. The vocational expert also testified that Plaintiff's testimony described work performed at the medium to heavy exertional levels. (Tr. 344).

A hypothetical question posed to the vocational expert directed him to consider an individual with Plaintiff's vocational characteristics, who was limited to medium work with no repetitive twisting or bending, no climbing or crawling, and with a need to change positions at least every 30 to 45 minutes. (Tr. 345). The expert testified that a hypothetical individual with these limitations could perform Plaintiff's past work as a maintenance worker and an auctioneer as described by the DOT. (Tr. 346)  But, adding the lifting limitations Plaintiff described would eliminate these jobs. *Id*. Considering the additional restriction to work in a low stress environment (no direct dealing with the general public, no production quotas, and no over-the shoulder supervision), the vocational expert testified that this would rule out the auctioneer position but would not preclude performance of the maintenance worker job. *Id*.

### III.    ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

4

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 20-38; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[3] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 ("the Listings")?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Steps 2 and 3 in the present case, the ALJ concluded that Plaintiff has severe

---

[3] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations. *See Colvin*, 475 F.3d at 730.

impairments of vertebrogenic disorder of the lumbar spine and thoracic spine (Tr. 21) but that the severity of this impairment does not meet or equal the level of the Listings. *Id*.

The parties' contentions in this case focus upon the ALJ's evaluation of the medical source opinions. This occurred mainly at Step 4 of the sequential evaluation. At Step 4, the ALJ found that Plaintiff had the Residual Functional Capacity to perform the basic exertional requirements of medium work.[4] The ALJ described his specific findings as follows:

> The claimant is restricted to performing the basic functional requirements of "medium" work as such work is defined for Social Security purposes. He can lift as much as 50 pounds occasionally and 25 pounds frequently. The claimant can perform the walking, standing and sitting requirements of medium work. He can perform frequent bending or stooping.

(Tr. 25 finding 5). This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI. (Tr. 14-26).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

---

[4]The Regulations define medium work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567( c).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

7

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff does not contest the ALJ's finding that he was not under a disability before September 30, 2001, when his insured status expired. Plaintiff instead states, "The only issue presented by this appeal is [P]laintiff's physical and mental limitations after the date of his application for SSI benefits of May, 2003." (Doc. #7 at 9). Plaintiff argues that the ALJ's assessment of his Residual Functional Capacity at the level of medium work is not supported by the evidence because not one physician of record opined that Plaintiff could perform such work. Plaintiff points out that no physician who offered an opinion about his work abilities and limitations found him able to do more than light work. Plaintiff further argues that no evidence supports the ALJ's finding of no severe mental impairments.

The Commissioner argues that substantial evidence in the record as a whole supports the ALJ's decision that Plaintiff was able to perform his past work and therefore was not under a disability.

### B. Analysis – Medical Source Opinions

Resolving Plaintiff's contentions begins with the standards used by ALJs to weigh the various medical source opinions in the administrative record.

The treating physician rule, when applicable, requires ALJs to give controlling weight to a treating physician's opinion rather than favoring the opinion of a

8

nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical expert who testified before the ALJ. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §404.1527(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §404.1527(d)(2). If a treating physician's opinion is not given controlling weight, it must be weighed under the remaining of factors in the Commissioner's Regulations. *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

The ALJ must also weigh the opinions of non-treating medical sources under the regulatory factors of consistency, supportability, and specialization. *See* 20 C.F.R. §§404.1527(d)(3)-(6), (f),

When doing so, more weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §404.1527(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p.

9

Their opinions, however, are weighed under the same factors as treating physicians' opinions including supportability, consistency, and specialization. *See* 20 C.F.R. §§404.1527(d), (f).

### C. Discussion

A review of the ALJ's decision reveals no citation or description of the legal criteria applicable under the various factors applicable under the Regulations. *See* Tr. 14-26. This was particularly problematic as to Dr. Danopolous' opinions that Plaintiff could only perform light work, not medium work as the ALJ found. This was no small error because the plain language of Regulations emphasizes the mandatory nature of this factor-based weighing by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions). In addition, not only was the ALJ's omission of the required weighing contrary to the Regulations, *see* 20 C.F.R. §404.152(f)(ii), it was contrary to the Commissioner's Ruling 96-6p, which provides:

> [T]he opinions of State agency medical and psychological consultants ... can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all

10

>other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p, 1996 WL 374180 at *3.

The ALJ's failure to follow this mandatory requirement set by the Regulations is also problematic because Dr. Danopolous examined Plaintiff at the request of the Ohio BDD and because Dr. Danopolous' opinion about Plaintiff's exertional work limitations tends to support his claim that he was under a disability.  An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *cf. Bowen v. Commissioner*, 478 F.3d 742, 747 (6th Cir. 2007)(ALJ erred by ignoring treating source's opinion).

The ALJ also failed to evaluate the opinions of two treating chiropractors, Drs. Huffer and Darnell, under any factor required by the Regulations.  Dr. Darnell diagnosed Plaintiff with lumbar disc degeneration, sciatic neuralgia, and lumbar subluxation.  (Tr. 256-58). SSR 06-03P clarifies how the Commissioner is to consider opinions and other evidence from sources who are not "acceptable medical sources."  SSR 06-03p, 2006 WL 2329939.  The Ruling notes:

>With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as chiropractors ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists.  Opinions from these medical sources who are not technically deemed

11

> 'acceptable medical sources,' under our rules, are important
> and should be evaluated on key issues such as impairment
> severity and functional effects, along with the other evidence
> in the file.

*Id.* at *4. Further, Ruling 06-03p explains that opinions from non-medical sources who, in their professional capacity, have seen the claimant should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *See Martin v. Barnhart*, 470 F. Supp.2d 1324, 1328-29 (D. Utah 2006) (citing Ruling 06-03p, 2006 WL 2329939 at *5-6). Finally, this Ruling states that:

> [a]lthough there is a distinction between what an adjudicator must
> consider and what the adjudicator must explain in the disability
> determination or decision, the adjudicator generally should explain the
> weight given to opinions for these 'other sources,' or otherwise ensure that
> the discussion of the evidence in the determination or decision allows a
> claimant or subsequent reviewer to follow the adjudicator's reasoning,
> when such opinions may have an effect on the outcome of the case.

SSR 06-03P, 2006 WL 2329939 at *7. The ALJ's decision neither considers nor mentions the supportability or consistency of either of the opinions provided by two treating chiropractors, Drs. Huffer and Darnell, and does not refer to any other regulatory factor as a ground for rejecting their opinions. *See* Doc. #7 at 11-12.

In addition, at the Ohio BDD's request, Dr. Norris reviewed the record in July 2003. He concluded that Plaintiff would be limited to lifting 10 pounds frequently and 20 pounds occasionally, standing or walking about 6 hours, sitting about 6 hours, and would be impaired in his ability to perform climbing stairs, balancing and kneeling. (Tr. 214-

12

18). Another BDD physician, Dr. Cho reviewed the record in November 2003 and concluded that Plaintiff was physically capable of performing light work. (Tr. 190-94). The ALJ's decision reveals no analysis as to their opinions as well. This was contrary to the Regulations. *See* 20 C.F.R. §404.1527(f). *Cf. Loza*, 219 F.3d at 393 ("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *cf. also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

There remains the possibility that the ALJ's errors were harmless, *see Bowen*, 478 F.3d at 747-49, an issue neither party specifically addresses. The Commissioner, finding no error in the ALJ's decision, argues that it was reasonable for the ALJ to conclude that the medical opinions were inconsistent with the underlying medical evidence and other evidence in the record, and find Plaintiff capable of performing medium work. *See* Doc. #8 at 12. The harmless error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's errors. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

It is highly doubtful that the Commissioner's *post-hoc* application of the required regulatory factors can be the sole basis to affirm an ALJ's decision when the ALJ has failed to weigh the treating and non-treating medical sources' opinions as required by the Regulations. "A court cannot excuse the denial of a mandatory procedural requirement protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome

13

on remand is unlikely. '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.' To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with §1527(d)(2), would afford the Commissioner the ability to violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action ... found to be ... without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546 (internal citations omitted).

The ALJ's errors when evaluating Dr. Danopolous, Dr. Huffer and Dr. Darnell's opinions were not harmless due to the presence of some explanation in support of their opinions. Although the Sixth Circuit has left open the issue of whether a *de minimis* violation of the procedural requirements of §404.1527(d)(2) can constitute harmless error, a review of the opinions of Drs. Danopolous, Huffer, and Darnell along with Drs. Norris and Cho do not reveal that their opinions are "so patently deficient that the Commissioner could not possibly credit" them... *Wilson*, 378 F.3d at 547. *See* Doc. #7 at 5-8. Even assuming, as the Commissioner argues, that substantial evidence of record supported the ALJ's conclusions, that evidence did not relieve the ALJ of his duty to evaluate the medical source opinions of record under the factors required by the Regulations. "Even if supported by substantial evidence..., a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a

14

claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 476 (citing *Wilson*, 378 F.3d at 546-47)(other citation omitted).  Consequently, the ALJ's errors were not harmless.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions are well taken.[5]

### VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social

---

[5] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of the parties' contentions about Plaintiff's mental impairments is unwarranted.

Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above.  On remand, the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB or SSI. Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Gary L. Wilt was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


June 23, 2008

                                                                    s/Sharon L. Ovington
                                                                      Sharon L. Ovington
                                                            United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).